IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS FOUSE, | ) |
| Plaintiff, | ) 2:14-cv-00810 |
| v. | ) Judge Mark R. Hornak |
| BEAVER COUNTY ET AL, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Currently before the Court are the Motions to Dismiss Plaintiff's Complaint filed by Defendants Beaver County and William Schouppe, ECF No. 12, and Mario Monac, ECF No. 18, along with filings in support and in opposition thereto, ECF Nos. 13; 15; 16; 17; 19; 20; 21; 23. Based on the Court's consideration of the papers filed and the matters presented at the hearing/argument on October 9, 2014 in open court as to the Defendants' Motions to Dismiss, the Court will enter an order consistent with the conclusions set forth herein, granting the Motions to Dismiss in part with prejudice and in part without.

The Plaintiff, Mr. Fouse, worked as a Sergeant at the Beaver County Correctional Facility ("Jail") during the time relevant to this lawsuit. ECF No. 1, at ¶ 1. The Defendants are Beaver County, the local government entity that operates the Jail, William Schouppe, the Jail's Warden, and Mario Monac, the Jail's former Lieutenant and Mr. Fouse's direct supervisor. *Id.* at ¶¶ 2–5.

Assuming the veracity of the facts alleged in the Complaint, as the Court must, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the events giving rise to this suit began on June 12, 2013 when Mr. Fouse handled $2,800 belonging to an arrested woman, "Jane Doe," in the booking

1

area of the Jail. *Id.* at ¶¶ 10, 13, 14, 16. Also present in the booking area were other officials including Mr. Monac, who instructed Mr. Fouse not to deposit the money into the Jail's safe until after officials knew whether Jane Doe would be incarcerated at the Jail. *Id.* at ¶ 19. This instruction was apparently consistent with the Jail's policy at the time, though the policy later changed to mandate deposit of all money into the safe until a judge executed a commitment or release order. *Id.* at ¶¶ 20–21. Jane Doe's money was placed in a white envelope on the counter of the Jail's booking area next to envelopes containing two other inmates' money. *Id.* at ¶¶ 27–28. Mr. Fouse alleges that Mr. Monac subsequently picked up two of three envelopes and left the booking area, but that Mr. Fouse believed Jane Doe's money was in the envelope that remained on the counter. *Id.* at ¶¶ 29–31. After learning that Jane Doe would be committed to the Jail, Mr. Fouse dropped the envelope he believed contained Jane Doe's money into the safe. *Id.* at ¶¶ 36–37.

Almost a month later, Mr. Fouse found out that the money he deposited (thinking it belonged to Jane Doe) actually belonged to a different inmate, and Jane Doe's money was missing. *Id.* at ¶¶ 38, 42. Warden Schouppe subsequently initiated an internal investigation into the matter and suspended Mr. Monac pending the results. *Id.* at ¶¶ 48, 50. Mr. Fouse was interviewed as part of the investigation. *Id.* at ¶ 51. Apparently the matter became a criminal one, because Mr. Fouse also met with County detectives on several occasions, including on September 5, 2013, when he informed the detectives that he felt Mr. Schouppe and Mr. Monac "were retaliating against him for his truthful statements regarding the events . . . and for his previous testimony in personnel matters involving other officers regarding Monac's conduct." *Id.* at ¶ 58.

On October 23, 2013, Mr. Monac attended a public County Prison Board meeting, at which he read a prepared statement that Mr. Fouse and another officer thought "sounded more as

2

if Schouppe had authored [it]." *Id.* at ¶ 62. Mr. Monac allegedly made numerous false and/or private statements about Mr. Fouse during the public meeting, at which Mr. Schouppe was present. *Id.* at ¶ 73. Those specific statements were: "Sargent [sic] Fouse has changed his story over and over"; "He had officers call me at home to tell me lies that he told county detectives in hopes that I would agree"; "He told county detectives that anyone could have taken the money, could have been lost, or perhaps an inmate getting released from booking may have walked out with the money"; and "Sargent [sic] Fouse's wife was employed at the jail and I had her fired for having a relationship with an inmate." *Id.*

Mr. Schouppe informed Mr. Fouse that he was suspended without pay on October 24, 2013. *Id.* at ¶¶ 63, 67. Then, on November 1, Mr. Schouppe informed Mr. Fouse that the Prison Board voted to terminate his employment. *Id.* at ¶ 68. Mr. Fouse also alleges that Mr. Schouppe made statements to Mr. Fouse's boss where he worked in secondary employment as a local police officer and which caused his "constructive termination in that secondary employment."[1] *Id.* at ¶ 77.

The Complaint asserts a single, long[2] count under 42 U.S.C. § 1983, which permits suit against government officials acting under color of law to deprive individuals of federally-protected rights. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Contained within that single count are allegations of violations under the First and Fourteenth Amendments of Mr. Fouse's (a) due process and (b) equal protection rights, (c) retaliation for protected speech, (d) conspiracy to commit constitutional violations, (e) violations of his constitutional right to privacy, (f) allegations of supervisory liability against Mr. Schouppe, and (g) municipal liability against Beaver County. *Id.* at ¶¶ 73–83.

---

[1] This allegation is very odd, since a "constructive termination" usually occurs when an employee quits and says he did so because he was harassed at his job. This allegation does not appear to match that construct.

[2] The Complaint is 83 paragraphs long, and Count I runs for approximately five (5) pages.

3

Notably absent from Mr. Fouse's Complaint are facts rising beyond the level of conclusory speculation to facial plausibility, as are required to survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By way of illustration (but by no means constituting an exhaustive list), Mr. Fouse does not plead facts pertaining to the type of "testimony" he previously provided against Mr. Monac, when that testimony occurred, or any specifics about its nature,[3] whether Mr. Fouse was present at the Prison Board meeting where Mr. Monac spoke (or how he otherwise knows what transpired at that meeting), more specific facts to support the allegation of concerted action between Mr. Monac and Mr. Schouppe other than that Mr. Monac's Prison Board statement "sounded" like Mr. Schouppe had written it,[4] ECF No. 1, at ¶ 62, any specific facts about Mr. Monac's role or duties as Mr. Fouse's "immediate supervisor," or what Mr. Schouppe (or somebody else) allegedly said to Mr. Fouse's supervisor at a secondary job that caused Mr. Fouse's "constructive termination,"[5] ECF No. 1, at ¶ 77, in addition to the time or place of that alleged conversation, or

---

[3] Such information would be required for the Court to determine whether Mr. Fouse's speech was protected, as it must, by first assessing whether "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made," *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)), modified as the analysis may be by the Supreme Court's recent opinion, *Lane v. Franks*, 134 S. Ct 2369, 2378 (2014). Only if the Court then concludes that Mr. Fouse engaged in protected speech could it then determine whether he has sufficiently alleged a retaliation claim. *Hill*, 455 F.3d at 241 ("To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action.").

[4] More specific facts would be necessary for the Court to identify any plausible claim of conspiracy, which would require enough facts to infer that Mr. Fouse and Mr. Schouppe actually made an agreement to violate Mr. Fouse's federal rights. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

[5] This information would be necessary for the Court to address a potential "stigma-plus" claim Mr. Fouse may seemingly be attempting to assert against Mr. Schouppe, as such a claim would require Mr. Fouse to show "1) publication of 2) a substantially and materially false statement that 3) infringed upon the reputation, honor, or integrity of the employee" to satisfy the "stigma" element, *Brown v. Montgomery County*, 470 Fed. App'x. 87, 91 (2012) (citing *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83–84 (3d Cir. 1996) (internal quotation marks omitted), in addition to the "plus" showing of termination from public employment, *Hill*, 455 F.3d at 238.

4

even the exact result of the conversation—was Mr. Fouse fired, disciplined, or subjected to some type of harassment as is common to allegations of constructive termination?

The Court is not a mind reader. Without any of these facts being pled, the Court also has no basis to assess whether the Complaint alleges the violation of a clearly established constitutional right in order to determine, as it must, whether the claims alleged in Count I as to Mr. Monac and Mr. Schouppe are nonetheless barred by the doctrine of qualified immunity. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

That said, some conclusions are plain now, as a matter of law. The Court can and does conclude that Mr. Fouse cannot plead a set of facts that would make it plausible that he could establish a procedural due process violation based on the allegation that he was denied a pre-termination *Loudermill* hearing to satisfy his procedural due process rights. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). As a Sergeant at the Beaver County Jail, Mr. Fouse was an at-will employee and can point to no authority granting him a cognizable property interest in continued employment under Pennsylvania state law.[6] *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Mr. Fouse's claim of a procedural due process violation under a *Loudermill* theory is therefore DISMISSED *with prejudice*.[7]

Moreover, to the extent Mr. Fouse contends that Mr. Monac caused a constitutional invasion of privacy when he allegedly made statements pertaining to sexual misconduct and a subsequent employment termination of Mr. Fouse's wife, such allegations are insufficient to support a claim by Mr. Fouse because Mr. Fouse cannot assert a right to privacy argument on his

---

[6] Mr. Fouse argues that he has a legitimate property interest in continued employment that entitled him to notice and a pre-termination hearing based on Pennsylvania's Civil Service Act. 71 Pa. Cons. Stat. Ann. § 741.807 ("No regular employe [sic] in the classified service shall be removed except for just cause."); *Pennsylvania State Corr. Officers Ass'n v. State Civil Serv. Comm'n, Dep't of Corr.*, 939 A.2d 296 (2007). However, Defendants aptly point out that the Civil Service Act governs correctional officers working in *state* prisons and not those employed by *county* jails, like Mr. Fouse. ECF 17, at 2. Upon independent review of the matter, the Court agrees with Defendants that Mr. Fouse's job was not governed by the provisions of the Civil Service Act.

[7] Thus, all claims against the County related to this allegation, ECF No. 1, at ¶ 81, are also dismissed *with prejudice*.

wife's behalf.[8] *See Malleus v. George*, 641 F.3d 560, 565 (3d Cir. 2011) ("[I]t is clear that the privacy right is limited to facts and an individual's interest in not disclosing those facts about himself or herself. It is the right to refrain from sharing intimate facts about *oneself*.") (emphasis added). Thus, Mr. Fouse's invasion of privacy claim is DISMISSED *with prejudice.*

Mr. Fouse also fails to state a Fourteenth Amendment equal protection claim as a matter of law. To allege such a claim, Mr. Fouse must provide facts that allow the Court to conclude he could plausibly prove he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239 (internal quotation marks and citation omitted). Mr. Fouse presumably asserts this equal protection claim under a "class of one" theory, which would require him to show "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* at 239. The Supreme Court has held that such a claim is not available in the public employment context.[9] *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008) ("Thus, the class-of-one theory of equal protection . . . is simply a poor fit in the public employment context."). Mr. Fouse's equal protection claim is therefore also DISMISSED *with prejudice.*[10]

---

[8] Mr. Fouse attempts to characterize Mr. Monac's statement, "Sargent [sic] Fouse's wife was employed at the jail and I had her fired for having a relationship with an inmate," ECF No. 1, at ¶ 73, as one pertaining to "the relationship between Fouse and his spouse, namely that Fouse's spouse was unfaithful," ECF No. 21, at 7, in an attempt to squeeze it into the category of "sexual information" the Third Circuit has deemed protected under the right to privacy. *Malleus v. George*, 641 F.3d 560, 565 (3d Cir. 2011). This is like fitting a round peg in a square hole—you can turn it any which way, but it never quite fits.

[9] Even if it was, Mr. Fouse would be unable to assert such a claim because he identifies no similarly-situated individuals who were treated differently than he was by the Defendants, as would be required to withstand the Motions to Dismiss. *Hill*, 455 F.3d at 239.

[10] Just as to the matters addressed in Note 7, *supra*, any claims on this basis against the County are likewise dismissed *with prejudice*.

However, the conduct Mr. Fouse alleges does at least raise the *possibility* that Mr. Fouse may be able to plead facts that *could* plausibly assert "stigma-plus,"[11] conspiracy, and retaliation claims. Both Mr. Schouppe and Mr. Monac worked for the County, which satisfies the § 1983 requirement of "state action/color of state law," and the Complaint does generally allege a few facts that *could* support those constitutional violations. Whether Mr. Fouse will actually be able to plead facts (consistent with Federal Rule of Civil Procedure 11) containing the requisite specificity to plausibly establish a violation of a constitutional right, and whether any right so implicated was "clearly established" such that it would allow Mr. Fouse to survive an application of the qualified immunity doctrine, *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, --- F.3d ---, No. 13-3232, 2014 WL 5155213, at *6, (3d Cir. Oct. 15, 2014), as to Mr. Monac and Mr. Schouppe, and whether there is a plausible factual basis to support the legal conclusion that the County could be on the hook for either of their conduct all remains to be seen. However, the Court cannot conclude at this stage that any effort to amend the Complaint would be futile as a matter of law. Since our Court of Appeals instructs that allowing at least one effort at amendment is the better course in such cases, the remaining claims alleged in Count I of the Complaint against Beaver County,[12] Mr. Monac in his individual capacity, and Mr. Schouppe in his individual capacity (allegedly unconstitutional "stigma-plus," conspiracy, and retaliation

---

[11] Such a claim is essentially boiled down to defamation, the "stigma," in concurrence with the deprivation of some additional right or interest," the "plus." *Hill*, 455 F.3d at 236. The Third Circuit has explicitly held that while an at-will public employee's interest in continued employment is not a sufficient property interest to guarantee him a *Loudermill* hearing, *id.* at 234–35, it is a enough of a "plus" to trigger constitutional analysis under the "stigma-plus" doctrine. *Id.* at 238.

[12] These remaining, limited assertions against the County are alleged in a purely conclusory, boilerplate fashion, ECF No. 1, at ¶¶ 81–82. Unless amended with actual, plausible factual support, such claims cannot escape dismissal with prejudice.

7

claims) are DISMISSED *without prejudice* and with leave to amend.[13] *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007).

Mr. Fouse may therefore file an amended Complaint in conformity with the matters set forth above, on or before November 24, 2014. Should he fail to do so, the dismissal of the Complaint in its entirety will be deemed to be with prejudice without further Order of this Court. Should he do so, the Defendants shall then respond as permitted by Fed. R. Civ. P. 12 within twenty-one (21) days of the date of the filing of such Amended Complaint.

Mark R. Hornak
United States District Judge

Dated: November 3, 2014

cc: All counsel of record

---

[13] Each of these claims is currently alleged in a gauzy fashion that makes it difficult to know with any certainty whom the claims are being asserted against and what substantive facts, rather than conclusory allegations, support them. With regard to "stigma-plus," Mr. Fouse seems to allege that either false statements made by Mr. Monac at the Prison Board meeting, or Mr. Schouppe's statements to Mr. Fouse's boss at his secondary employment, or both, coupled with his termination from one job or the other, or both, amounted to a constitutional violation. ECF No. 1, at ¶¶ 62, 73, 77. With regard to the retaliation and conspiracy claims, Mr. Fouse seems to aver that he gave formal testimony against Mr. Monac in some unidentified proceeding which occurred on an unidentified date, and that Mr. Monac and Mr. Schouppe acted together (in retaliation for that testimony) by pointing detectives in Mr. Fouse's direction based on his handling of Jane Doe's money and ultimately colluding in some unidentified way to have Mr. Fouse terminated from his employment. ECF No. 1, at ¶¶ 58, 61, 62, 75. Whether Mr. Fouse can allege sufficient facts to withstand a Motion to Dismiss with a second chance at pleading remains to be seen, but the Court simply cannot conclude that amendment at this juncture would be futile as a matter of law.