## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS FOUSE, | ) |
| | ) |
| Plaintiff, | ) 2:14-cv-00810 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| BEAVER COUNTY ET AL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **OPINION**

**Mark R. Hornak, United States District Judge**

This is a case brought under 42 U.S.C. § 1983 by Thomas Fouse, a former Sergeant at the Beaver County Correctional Facility ("Jail"), against (a) Beaver County, (b) William Schouppe, the Jail's Warden, and (c) Mario Monac, the Jail's former Lieutenant and Mr. Fouse's direct supervisor. ECF No. 27, at ¶¶ 1–5.

Before the Court is the second round of Motions to Dismiss filed by all Defendants under Federal Rule of Civil Procedure 12(b)(6), ECF Nos. 28; 31, which argue that the Plaintiff's now-Amended Complaint, ECF No. 27, fails to state causes of action for a "stigma-plus" due process violation, First Amendment retaliation, and conspiracy to violate Mr. Fouse's rights. After reviewing the Motions, the briefs filed in support and in opposition thereto, ECF Nos. 30; 32; 33; 34; 35; 36; 38; 39; 40, the oral arguments presented on January 29, 2015, and for the reasons set forth below, the Motions to Dismiss will be granted in part and denied in part. All claims against all Defendants, other than the stigma-plus claim against Defendant Schouppe, will be dismissed with prejudice.

## I.  BACKGROUND

While the Amended Complaint contains an (over) abundance of facts, those few that are actually relevant to the disposition of these Motions are as follows: On June 12, 2013, Sergeant Fouse and Lieutenant Monac were both involved in the booking process of a woman who had been arrested and brought to the Jail, Jane Doe. ECF No. 27, at ¶¶ 10–13, 18–19. Mr. Fouse took possession of over $2,800 of Jane Doe's money, wrote out a receipt, and followed Defendant Monac's instructions to refrain from depositing the money into the Jail's safe and instead to leave the money in a white envelope, along with two other such envelopes on the counter at the Jail. *Id.* at ¶¶ 16, 18–19. When it came time to stow the money in the safe, Mr. Fouse alleges that he watched Defendant Monac place two of the three envelopes in his back pocket and leave the area. *Id.* at ¶ 28. Later, Mr. Fouse returned to the counter and, believing the remaining envelope contained Jane Doe's money,[1] dropped the envelope into the safe, informing Defendant Monac that he did so afterward. *Id.* at ¶¶ 37–38.

On or about July 9, 2013, Mr. Fouse learned that Jane Doe's money was missing and the money he had dropped into the safe had in fact belonged to a different detainee. *Id.* at ¶¶ 39–43. Warden Schouppe instituted an investigation into the matter a few days later, and suspended Defendant Monac pending the results of that investigation because Schouppe had allegedly seen a video showing that Defendant Monac had the envelopes in his pocket when he left the room. *Id.* at ¶¶ 49, 51. Mr. Fouse met with both Defendant Schouppe and with Tony Amadio, the Prison Board Chairman, around this time to provide his account of the matter. *Id.* at ¶¶ 51–53. At each meeting, he was told that they knew Defendant Monac had taken the money and that Mr. Fouse would not be disciplined. *Id.*

---

[1] Perhaps analogous to a bad game of Three-card Monte, http://en.wikipedia.org/wiki/Three-card_Monte, or the "shell game" of New York City sidewalk fame, http://en.wikipedia.org/wiki/Shell_game.

The investigation turned criminal in early August of 2013, and Mr. Fouse met with Beaver County Detectives on several occasions regarding the incident. *Id.* at ¶¶ 59–62. At one such meeting, Mr. Fouse informed the detectives that "he believed Schouppe and Monac were retaliating against him for his truthful statements regarding the events of July 12, 2013, and for his previous testimony in personnel matters involving another officer's claims regarding Monac's conduct." *Id.* at ¶ 62. Mr. Fouse says that he had been a witness in 2007 and 2008 as an Assistant Union Steward in an EEOC proceeding against Defendant Monac in support of another officer's charge of discrimination. *Id.* at ¶¶ 63, 65. Mr. Fouse informed the detectives that he also testified in that matter "regarding the sexual harassment that his wife had undergone, at the hands of Monac, while she was employed as a corrections officer at the jail, and how this affected their marriage." *Id.* at ¶ 64. He claims he spoke in 2007 or 2008 about both the sexual harassment his wife allegedly endured and Defendant Monac's "sexual harassment of female inmates," and states that the matters were of "great personal concern" as well as of public concern. *Id.* at ¶ 66. Mr. Fouse alleges that the encounter "made [Fouse] become unnerved, having to recount the effects of Monac's sexual harassment of Fouse's wife." *Id.* at ¶ 70.

On October 23, 2013, Defendant Monac attended a public Prison Board Meeting and read a prepared statement allegedly containing false and defamatory statements about Mr. Fouse, and other Jail officers told Mr. Fouse, and Mr. Fouse agreed (though he was not at the meeting), that it "sounded more as if Schouppe had authored the document."[2] *Id.* at ¶ 76. Mr. Fouse and others were also "bewildered that the Prison Board, which included Schouppe as a member, would permit [Monac] to read such a personnel matter in a public meeting," which should have been handled in an "executive session." *Id.*

---

[2] The contents of the statement, including what Mr. Fouse alleges to be false and defamatory statements that infringed on his reputation in violation of the Fourteenth Amendment, were attached to the Complaint and will be discussed in greater detail in the stigma-plus section of this Opinion.

The morning after the Prison Board Meeting, Defendant Schouppe informed Mr. Fouse that "he had a letter," presumably from the Prison Board, "stating that he [Fouse] was being suspended, without pay." *Id.* at ¶¶ 79, 83. Then, on November 1, 2013, Defendant Schouppe called Mr. Fouse and informed him that the Prison Board had voted to terminate him. *Id.* at ¶ 84.

Also on November 1, 2013, Defendant Schouppe took a phone call from Chief Johnston, Mr. Fouse's boss at Mr. Fouse's secondary employment at the Conway Police Department. *Id.* at ¶ 85. Defendant Schouppe allegedly told Chief Johnston "that Fouse was involved with the theft of the missing money, and that he was going to be charged in the incident." *Id.* at ¶ 86. The Amended Complaint states that after that call, Johnston called Mr. Fouse and "gave him the option to resign or be fired" because of the money envelope incident. *Id.* at ¶ 87. Mr. Fouse alleges that he felt compelled to resign, though he maintains that Defendant Schouppe's statements were false, and that Schouppe knew they were false, because (1) Mr. Fouse has never been criminally charged with any offense relating to the theft of the money; and (2) the District Attorney had publicly stated at the Prison Board Meeting (which Defendant Schouppe attended) that "no one was going to be charged with the theft of Jane Doe's money." *Id.* at ¶ 89–90.

This Court previously dismissed with prejudice any claims Mr. Fouse sought to bring on theories of procedural due process under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), and its progeny, along with those alleging a constitutional invasion of privacy and equal protection violations. *Fouse v. Beaver Cnty.*, No. 14-00810, 2014 WL 5585933, at *3 (W.D. Pa. Nov. 3, 2014).

The Court then permitted Mr. Fouse to amend his Complaint as to claims dealing with a "stigma-plus" due process violation, retaliation, and conspiracy. *Id.* at *4. Mr. Fouse filed his

4

Amended Complaint on November 24, 2014. ECF No. 27.[3]  The Defendants have moved to dismiss all such claims. ECF Nos. 28; 31.

## II.  LEGAL STANDARD

Courts assessing a complaint under Federal Rule of Civil Procedure 12(b)(6) must "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Although courts must accept the veracity of all well-pleaded facts, they need not credit legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The alleged facts must be "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950). Essentially, to withstand a motion to dismiss, a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation marks and citations omitted).

## III.  DISCUSSION

Plaintiff pleads a single, really long, narrative claim[4] in attempting to assert multiple theories of liability for alleged constitutional violations actionable under 42 U.S.C. § 1983. To overcome the Motions to Dismiss such claims, Mr. Fouse must plausibly allege that he was

---

[3] With two (2) rounds of pleading, and two (2) oral argument sessions, the Court believes that it has now given Mr. Fouse all of the amendatory freedom required by our Court of Appeals in cases such as *Great Western Mining & Mineral Company v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

[4] The Plaintiff's Count I spans approximately four (4) pages containing ten (10) paragraphs, incorporates the prior ninety (90) paragraphs, and largely resembles a melting pot of constitutional language including all of the case law buzz words: "privileges and immunities," "fail[ure] to adequately supervise," "conspired to retaliate," "deliberate indifference and gross negligence," "pursuant to governmental custom, practice and policy which was so permanent and well-settled that it constituted practice or policy which had the force of law." ECF No. 27, at ¶¶ 92–102. They are generally not tethered to specific factual averments. The Court will do its best in the pages that follow to disentangle and assess the various claims Plaintiff attempts to push through the 12(b)(6) gate.

deprived of a right secured by the Constitution or laws of the United States by a person acting with the authority of state law. *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013) (en banc), *as amended* June 14, 2013, *cert. denied*, 134 S. Ct. 824 (2013). Courts considering § 1983 claims must first determine whether any federal right has in fact been violated. *Nicini v. Morra*, 212 F.3d 798, 806 (2000) (en banc).

Mr. Fouse appears to assert constitutional violations against all three Defendants in "Count I" in the form of (1) a Fourteenth Amendment due process claim based on a stigma-plus theory, (2) a First Amendment retaliation claim, and (3) a conspiracy claim stemming from one or both of the others. The Court will address each in turn.

## A. Stigma-Plus Claim

Although there is no protectable constitutional liberty interest in one's reputation *alone*, a plaintiff can allege a due process violation by showing a "stigma," *i.e.*, reputational harm, in addition to, or "*plus*," a "deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). This is called a "stigma-plus" claim, where "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination [that occurs in connection with the defamatory impression] is the 'plus.'" *Id.*

### 1. The "Stigma" Element

To adequately plead the "stigma" element, a plaintiff must allege "1) publication of 2) a substantially and materially false statement that 3) infringed upon the 'reputation, honor, or integrity' of the employee." *Brown v. Montgomery County*, 470 F. App'x 87, 91 (2012) (quoting *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83–84 (3d Cir. 1996)). Importantly, "no liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Id.* at 91 (quoting *Mercer v. Cedar Rapids,* 308 F.3d 840, 845–46 (8th Cir. 2002)) (internal quotation marks and

alterations omitted); *Young v. Kisenwether*, 902 F. Supp. 2d 548, 558 (M.D. Pa. 2012) (dismissing the complaint and holding that statements disseminated regarding questionable competency and subpar job performance were insufficient to meet the stigma prong of the test) (collecting cases on the same proposition).

Mr. Fouse makes two allegations in support of his stigma-plus claim: first, he alleges that Defendant Monac read a statement containing falsities about Mr. Fouse at the public Prison Board Meeting held on October 23, 2013, ECF No. 27, at ¶¶ 76–77, and second, he claims that Defendant Schouppe made false statements to Mr. Fouse's "secondary" employer regarding the incident involving the theft of an inmate's money, which resulted in Mr. Fouse's forced resignation from that moonlighting job, *id.* at ¶¶ 85–90.

The first claim lacks merit, even when viewed in the light most favorable to the Plaintiff. Having reviewed each allegedly false and stigmatizing statement contained in Defendant Monac's statement, *id.* at ¶ 77(a)–(n), the Court concludes that no stigma-plus claim lies in this allegation, as each statement either contains no mention of Mr. Fouse, is immaterial, or could not plausibly cause reputational harm to Mr. Fouse.[5] Moreover, a review of the statement Defendant Monac read to the Board as a whole, ECF No. 27-1, as well as the newspaper article covering the meeting, ECF No. 27-2, show that to the extent Mr. Fouse is referenced at all, such comments pertained to nothing more than a workplace squabble[6]—complaints that Mr. Fouse and others in fact sought to stigmatize Defendant Monac in some way and force *him* from his job, *see* ECF No. 27, at ¶ 77(j); ECF No. 27-1, at 2 ("Sgt. Fouse and Capt. Trkula has [sic] jumped on board in their

---

[5] Or some combination of these factors, as is perhaps evidenced most clearly by the allegedly false, stigmatizing statement that "Monac states that he was suspended for thirty (30) days for videotaping Officer Simpson, this was untrue, in that Monac was suspended two (2) weeks for that incident, and two (2) weeks for leaving an inmate, soaking-wet with no shoes on, out in inclement weather." *Id.* at ¶ 77(l). What this statement (while apparently false, according to Mr. Fouse) has to do with Mr. Fouse, his reputation, or the incident at issue here is difficult to fathom.

[6] Which the Supreme Court has generally declined to cloak with constitutional significance. *Connick v. Myers*, 461 U.S. 138, 148–49 (1983).

7

efforts to have me removed from my position at the jail"); ECF No. 27-1, at 2 ("Anything and everything these three individuals can think of, they have accused me of. Even, now, Sgt. Fouse has pointed the finger at me of [sic] taking the money."). Statements of this nature, even if false, simply do not constitute stigmatizing statements sufficient to support a constitutional claim.[7]

The closest thing to a stigmatizing statement made by Defendant Monac is the statement that "Sgt. Fouse has changed his story over and over." ECF No. 27-1, at 2; ECF No. 27, at ¶ 77(h) (specifically alleging the falsity of that statement). Even that statement, however, does not sufficiently allege a constitutional violation. The inference Plaintiff hopes the Court will say could be plausibly drawn is that Defendant Monac was implying that Plaintiff is a liar in a general sense. While such a statement might affect theoretically one's general reputation, it was made in the context of a somewhat long, rambling statement whereby an already suspended public employee was attempting to save his job before the Board charged with reviewing his conduct by lashing out at a co-worker. ECF No. 27, at ¶ 51 (stating that Defendant Schouppe had suspended Defendant Monac "pending an internal investigation"). And that context is key. Plaintiff has cited no authority, and the Court is aware of none, standing for the proposition that a suspended employee on the cusp of being fired, albeit a supervisor before his suspension, could be acting as a government official in these circumstances.[8]   There is no allegation that the statement was

---

[7] Mr. Fouse also claims that Defendant Monac acted "in conjunction with Defendant Schouppe and under the authority of Defendant Beaver County" when he made these statements. ECF No. 36, at 18. Since the Court concludes the alleged statements do not make out a constitutional violation, it need not address whether this baldly conclusory allegation as to the Defendants plausibly and sufficiently pleads that they somehow acted in concert for purposes of this part of the stigma-plus analysis (though the Court would have its serious doubts if it did consider that question, given the wholly conclusory nature of these allegations).

[8] And that makes sense, as it is hard to comprehend how a suspended supervisor could effectuate any type of retaliation—by definition, a "suspension" implies that any power one had has been suspended, or removed, for at least a period of time. It is a stretch to conclude that anyone acting in such an independent capacity can be considered "clothed with the authority of state law," or acting in a way that is "fairly attributable to the state" such that his action was (a) a constitutional violation and (b) performed in the scope of his authority.  *Cf. Gibson v. City of Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990) ("While it remains true that misuse of power, *possessed* by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law, one cannot misuse power that one no longer possesses." (internal quotation marks and citation omitted))

adopted as true by the Board, that it in any way impacted the Board's decision to terminate Mr. Fouse, or that it was disseminated in a manner that could cause a stigma which would rise to the level of a constitutional violation because it impaired Mr. Fouse's ability to engage in specific future employment or created some other defined and discrete issue stigmatizing him.[9] Absent such plausible allegations, this claim cannot stand against Defendant Monac, or be attributed to the County as some sort of policy, practice, or custom of the County.

Unlike the first such claim, the Court cannot conclude at this stage that Mr. Fouse's second stigma-plus allegation fails as a matter of law, but it is a very close call. The Amended Complaint alleges that on the very day he notified Mr. Fouse of his termination from the Jail, Defendant Schouppe also informed the Conway Police Chief Johnston, Mr. Fouse's boss in his "secondary" job, that Mr. Fouse "was involved with the theft of the missing money, and that he was going to be charged in the incident." ECF No. 27, at ¶¶ 85–86. Thereafter, the Conway Police Chief called Mr. Fouse "and gave him the option to resign or be fired," and Mr. Fouse subsequently resigned from his "secondary" employment rather than be terminated. *Id.* at ¶¶ 87– 88. The Amended Complaint further specifically alleges that "Schouppe's statement to Chief Johnston was false," explaining further that Mr. Fouse "has never been charged with any crime

---

(holding the use of police equipment by a suspended police officer insufficient to make him a state actor under § 1983); *Barna v. City of Perth Amboy*, 42 F.3d 809, 816–19 (3d Cir. 1994) ("[A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law."); *Washington-Pope v. City of Phila.*, 979 F. Supp. 2d 544, 555 (E.D. Pa. 2013) ("[A] policeman's private conduct, outside the line of duty and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." (quoting *Martinez v. Colon*, 54 F.3d 980, 986–87 (1st Cir. 1995))) (collecting and assessing cases inside and outside the Third Circuit addressing the inquiry of what constitutes state action for police officers). "[W]hile courts in this Circuit do not suggest that the mere fact that a police officer's conduct was motivated by personal revenge compels a finding that he was not acting under color of state law, they have been careful to require plaintiffs to show that officers acting for private motives did in fact purport to use state authority." *Id.* at 561–62 (internal quotation marks and citations omitted).

[9] Moreover, the newspaper article never mentioned Mr. Fouse by name, and merely noted that "Monac also criticized other guards." ECF No. 27-2. The Court cannot accept the contention that a publicly-disseminated statement which does not even refer to Mr. Fouse by name is so stigmatizing as to rise to the level of a constitutional violation. Indeed, it is difficult to imagine exactly how Mr. Fouse's reputation could have been harmed by an article that did not identify him either by name or a description specific to him.

involving the theft," and that Defendant Schouppe made these statements to the Police Chief knowing from his attendance at the Prison Board Meeting that the District Attorney announced that no one would be charged with the theft. *Id.* at ¶¶ 89–90.

Viewing these alleged facts in the light most favorable to the Plaintiff, the Court concludes that at least the statement allegedly made by Defendant Schouppe to Chief Johnston that Mr. Fouse would be charged (presumably criminally) with theft of the money meets the stigma requirement of a stigma-plus claim.[10] The falsity of the claim is adequately alleged, as Mr. Fouse has pled both that he never was charged with the theft and that Defendant Schouppe was aware that no one would be charged at the time he spoke to Chief Johnston. *Id.* at ¶¶ 89–90.

The publicity of the statement is also sufficiently alleged, as other courts have explained that "[d]epending on the facts, quite limited dissemination may be sufficient." *Povish v. Pa. Dep't of Corr.*, No. 13-0197, 2014 WL 1281226, at *5 (E.D. Pa. Mar. 28, 2014) (collecting cases). The Second Circuit has described the publicity prong as satisfied when the stigmatizing statements are "likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities." *Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y.*, 820 F.2d 41, 44 (2d Cir. 1987) (holding the public disclosure requirement satisfied when the "stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers") (collecting cases with similar holdings from the D.C., Fifth, Eighth, Tenth, and Seventh Circuits). Mr. Fouse does not simply contend that Defendant Schouppe's stigmatizing statements had a damaging effect on his general, future job opportunities—he takes it a step further, and pleads that those

---

[10] The other statement, that Mr. Fouse was "involved with the theft of the missing money," was not facially false, as Mr. Fouse *was* involved in the incident, at least in a general sense.

10

statements actually resulted directly in the loss of his "secondary" employment.[11] As the Second Circuit has explained, a plaintiff "need not wait until he actually loses some job opportunities because the presence of the charges in his personnel file coupled with a likelihood of harmful disclosure already place him between the devil and the deep blue sea." *Id.* at 45 (internal quotation marks and citation omitted). At this relatively early stage of the case, the Court concludes that the alleged dissemination of at least one stigmatizing statement to a supervisor in a "secondary" job is adequate dissemination to meet the publicity prong.

Finally, the Amended Complaint sufficiently alleges that the statement infringed on Mr. Fouse's "reputation, honor, or integrity" and goes beyond an allegation of "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Brown,* 470 F. App'x at 91; *see Hill,* 455 F.3d at 231, 236 (mayor's statement that the plaintiff made "'illegal' allocations of funds" was sufficiently stigmatizing); *Bartholomew v. Fischl,* 782 F.2d 1148, 1150, 1153 (3d Cir. 1986) (mayor accusing the plaintiff of theft, along with general harassment of plaintiff, was sufficiently stigmatizing). That statement, according to the Amended Complaint, caused Chief Johnston to put Mr. Fouse between a rock and a hard place—either resign or be fired from his position as a Conway police officer. If allegations of harm to future employment possibilities are sufficient to withstand a motion to dismiss in the stigma-plus context, as our Court of Appeals has held, *see Ersek,* 102 F.3d at 84–85; *McKnight v. Southeastern Pa. Transp. Auth.*, 583 F.2d 1229, 1236 (3d Cir. 1978), then Plaintiff's claim that he lost his current secondary employment as a result of the defamatory statements also meets this test.[12]

---

[11] Surely, the loss of current employment as a result of the stigmatizing statements is a more concrete, and sufficient, harm than the potential for future loss of employment opportunities when the information is uncovered.

[12] Whether Mr. Fouse was "constructively discharged" within the legal meaning of the phrase is of no moment when Mr. Fouse alleges in his Amended Complaint that he was given the choice to either resign or be fired. Taking the allegation that his secondary employer presented him with this choice because of Defendant Schouppe's statement, the statement itself produced a sufficient stigma for the claim to survive at this early stage. The Court will therefore not delve into the details of Defendants' argument, ECF No. 32, at 6, or Plaintiff's response, ECF No. 35, at 17–19,

On somewhat analogous facts, a district court in this Circuit denied a motion to dismiss a stigma-plus claim filed against a fire company and its trustees. *Dunkel v. Mt. Carbon/N. Manheim Fire Co.*, 970 F. Supp. 2d 374, 383–84 (M.D. Pa. 2013). In *Dunkel*, the plaintiff was allegedly terminated from his position as a volunteer firefighter for serving alcohol to nonmembers of the fire company and for posting about fire company business online. *Id.* at 377. With regard to the stigma prong of his claim, the court explained:

> Dunkel contends that statements contained within two letters drafted by the fire company were made public and are false. The specific statements state that Dunkel "is being brought up on charges for serving alcohol beverages to non-members on 3–1–12 ... and for posting on Facebook about the possibility of charges for leading a search and/or rescue of a missing person thus discussing company business in a public format." Dunkel avers that he did not commit any violations on March 1, 2012 because the fire company does not prohibit serving alcohol to nonmembers or assisting in a search and rescue. Reading the complaint in the light most favorable to Dunkel, the fire company's statements may go beyond inadequate performance or malfeasance and directly infringe upon Dunkel's reputation and integrity.

*Id.* at 383 (internal record citations and alterations omitted). Similarly, in this case Mr. Fouse alleges that Defendant Schouppe told Mr. Fouse's secondary employer that Mr. Fouse "was going to be charged in the incident." ECF No. 27, at ¶ 86. Mr. Fouse pleads that the statement is false, and that indeed he has not been charged. *Id.* at ¶¶ 89–90.

The *Dunkel* court also observed that since the plaintiff's full-time employment was serving "[a]s an elected official, Dunkel's reputation is inextricably linked to his ability to secure future employment as an elected official." 970 F. Supp. 2d at 383. While the court noted that discovery may show no evidence of negative publicity, it held that "Dunkel's factual averments properly demonstrate his present or future employment as an elected official may be adversely affected by the fire company's termination." *Id.* Just as an elected official's reputation is linked to his ability to obtain future employment in his field, a police officer's reputation as one involved

---

on the technicalities of whether Mr. Fouse was actually, constructively, or otherwise discharged from his secondary employment. He adequately pleads he lost that job because of Defendant Schouppe's statement.

in criminal acts is similarly at issue when that officer applies for or serves in other law enforcement positions. For all of these reasons, the Court concludes that at this stage, Mr. Fouse has adequately alleged the "stigma" element as to Defendant Schouppe.

## 2. The "Plus" Element

Moving to the "plus" element of the stigma-plus test, a complaint must allege that the defamation occurred in conjunction with a discharge from public service. *Hill*, 455 F.3d at 238–39. While at-will government employees such as Mr. Fouse lack a protectable property interest in their continued employment, loss of that employment does suffice as the loss of "some additional right or interest" to establish a stigma-plus claim. *Id.* Specifically, a plaintiff may satisfy the "plus" element by pleading that he was defamed "in the course of" being discharged from public employment. *Id.* at 238. The Third Circuit has explained that the "'allegedly defamatory statement and the firing must be at least roughly contemporaneous,'" *Pasour v. Philadelphia Hous. Auth.*, __ F. Supp. 3d __, No. 13-2258, 2014 WL 7177358, at *10 (E.D. Pa. Dec. 17, 2014) (quoting *Orelski v. Bowers*, 303 F. App'x 93, 94 (3d Cir.2008)), and has suggested in the context of civil rights cases that two days is sufficiently contemporaneous to show causation, *id.* at *10 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–80 & n.5 (3d Cir. 2000)).

Mr. Fouse's termination from his public employment at the Jail meets this prong with regard to the allegations against Defendant Schouppe. The Complaint states that Defendant Schouppe called to officially terminate Mr. Fouse on November 1, 2013 after the Prison Board voted to dismiss him.[13] ECF No. 27, at ¶ 84. On "[t]hat same day," Defendant Schouppe allegedly spoke with Chief Johnston and made the defamatory statements that resulted in Chief Johnston's phone call to Mr. Fouse, giving him the option of resigning from his secondary job, or being fired. *Id.* at ¶¶ 85–88. This temporal proximity between Mr. Fouse's termination from his

---

[13] Defendant Schouppe was also a member of the Prison Board. ECF No. 27, at ¶ 76.

job at the Jail and Defendant Schouppe's statements to Chief Johnston, which resulted in enough of a stigma that Mr. Fouse was essentially forced out of that job, is sufficient to establish the plus prong of the analysis at this stage.[14]

### 3. Remedy for Stigma-Plus Claim

There remains the argument that even if Mr. Fouse plausibly pled both the "stigma" and "plus" elements, his claim should still be dismissed because the only permissible remedy in a stigma-plus action is a name-clearing hearing, and that failure to request such a hearing should bar the claim. ECF No. 30, at 13–14.

The Court need not analyze this argument at length. The question of whether a name-clearing hearing is the only appropriate relief for such a claim has not yet been squarely decided by the Third Circuit, *Hill*, 455 F.3d at 236 n.15 ("We have not in the past decided-and do not have occasion to decide here-whether a plaintiff who prevails on a 'stigma-plus' claim may be entitled to remedies other than a name-clearing hearing."), nor has the issue of whether a plaintiff needs to have requested such a hearing in order to warrant even that remedy, *Kahan v. Slippery Rock Univ. of Pa.*, __ F. Supp. 3d __, No. 12-407, 2014 WL 4792170, at *41 n.10 (W.D. Pa. Sept. 24, 2014) (collecting cases standing for both sides of the argument), *reconsideration denied sub nom.*

---

[14] In their Supplemental Brief, Defendants Schouppe and Beaver County argue that Mr. Fouse's claim cannot stand because his "plus" prong is framed as the discharge from his secondary employment, rather than from his employment with the County. *See* ECF No. 38, at 11–13. As noted above, the forced resignation from his secondary employment in fact is part of the "stigma" prong, as it demonstrates the loss of a concrete job opportunity resulting from Defendant Schouppe's statement to Chief Johnston. The "plus" remains his discharge from the Jail, which Defendant Schouppe also carried out. ECF No. 27, at ¶ 84; *see Arneault v. O'Toole*, 513 F. App'x 195, 198–99 (3d Cir. 2013) ("[Plaintiff] alleges that he lost possible career prospects . . . . [This is] part of the stigma alleged and not an additional lost interest or right.").

Because Mr. Fouse's alleged "plus" is still his termination from the Jail, the case cited in support of Defendants' argument is distinguishable. They point to *Grimm v. City of Uniontown*, No. 06-1050, 2008 WL 282344 (W.D. Pa. Jan. 31, 2008), explaining that there, the court held no stigma-plus claim could lie against a County when its police officers arrested the plaintiff, a Captain in the United States Army, because of punishment the Army inflicted on him despite the fact that the charges against him were dropped. Unlike in *Grimm*, where the plaintiff attempted to assert a stigma-plus claim against the County for the stigma of the arrest and the arguable "plus" was the punishment inflicted by the Army, here Mr. Fouse alleges that Defendant Schouppe stigmatized him through his statements made to Chief Johnston and the resulting loss of that job, in conjunction with his termination from the Jail by Defendants Schouppe and Beaver County.

14

*Kahan v. Slippery Rock Univ. of Pa.*, No. 12-407, 2014 WL 7015735 (W.D. Pa. Dec. 11, 2014); *Erb v. Borough of Catawissa*, 749 F. Supp. 2d 244, 251 (M.D. Pa. 2010) ("A plaintiff's failure to request such a hearing is not fatal to his claim."). At the same time, our Court of Appeals has pretty heavily hinted that the answer to each question is "no,"[15] and in light of that, this Court is hesitant to dismiss the claim at this stage on these grounds without pronounced precedential authority requiring that result. *See also Andrekovich v. Chenoga*, No. 11-1364, 2012 WL 3231022, at *9 n.3 (W.D. Pa. Aug. 6, 2012) ("Whether plaintiff ultimately can recover any one or more [of] his alleged damages under such circumstances is best determined if and when it becomes necessary to do so after full development of the record. Similarly, defendants' attempt to find shelter in the fact that plaintiff does not allege that he demanded a name-clearing hearing is wide of the mark. Plaintiff is not required to do so.") (citing *Ersek*, 102 F.3d at 84 n.8; *Hill*, 455 F.3d at 239 n.19).

Lastly, there is the argument that if the official who stigmatized the Plaintiff does not have the power to grant him such a hearing, then such a claim cannot lie against that official. With regard to Defendant Monac, that lack of authority, or even influence, is clear—he was suspended and then fired.[16] Any credibility and influence he wielded as a supervisor was stripped from him. For Defendant Schouppe, by contrast, his alleged personal involvement in the decision to terminate Mr. Fouse, as a member of the Board, is sufficient to withstand a Motion to Dismiss as to whether he could at least materially influence that decision, and whether he could (after further factual development) have liability for the termination decision. *See Sutton v. Rasheed*, 323 F.3d

---

[15] *See Graham v. City of Phila.*, 402 F.3d 139, 143 n.3 (3d Cir. 2005) ("[D]amages might be available [in a stigma-plus case] because a name-clearing hearing might not always 'cure all the harm caused by stigmatizing government comments.'") (quoting *Ersek*, 102 F.3d at 84 n.6); *see also Hill*, 455 F.3d at 239 n.19 ("It is not clear from the complaint whether Hill requested any sort of name-clearing hearing, but we have not held that he was required to do so.").

[16] Although the Complaint does not include the fact that Defendant Monac was terminated at some time soon after the Prison Board Meeting, Defense counsel raised this point at oral argument and Plaintiff did not dispute it.

236, 249 (3d Cir. 2003), *as amended* May 29, 2003 ("[A] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable.") (internal quotation marks and citation omitted).[17]

## B. First Amendment Retaliation Claim

"To establish a First Amendment retaliation claim, a public employee must show that his speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (citing *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)). The causation element may be pled by setting out: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link, or . . . evidence gleaned from the record as a whole [from which] the trier of the fact should infer causation."[18]  *Lauren W. ex rel. Jean W. v.*

---

[17] To the extent Defendant Schouppe contends that a stigma-plus claim cannot stand against him because at most he was only personally and unilaterally responsible for one prong of the test, the stigma (because the Prison Board carried out the "plus" of voting to terminate Mr. Fouse), the Court concludes that the exact scope of Defendant Schouppe's influence over the rest of the Board by virtue of his position as Warden remains to be seen from further development of the record. *See Kocher v. Larksville Borough*, 548 F. App'x 813, 816, 820–21 (3d Cir. 2013) (expressing no disagreement with the "plus" prong having been met as to the police chief after the Borough terminated a police officer though the stigma was caused by the Chief) ("stigma" occurred after the "plus") (upholding a grant of summary judgment based on insufficient evidence that the police chief actually placed a stigmatizing memorandum in the officer's personnel file and allowed it to be inspected by potential employers); *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (parity of the creator and source of the "stigma" and the "plus" not required). Although some courts have held that such a claim may not lie against a person or entity who could not *both* create the "stigma" and also terminate the public employee ("plus") without something more, *see id.* at 93, the Third Circuit's opinions in *Hill* and *Fischl* lead the Court to conclude that at least at this early stage, a plausible inference may be drawn that Defendant Schouppe was more than just a member of the Board, but in fact had sufficient sway to get the ball rolling, so to speak, in terminating Mr. Fouse, *see Fischl*, 782 F.2d at 1153; ECF No. 27, at ¶¶ 49, 51–53, 74, 83–84.  Should this inference find the requisite support in discovery, Defendant Schouppe plausibly could be liable for his actions, as he would then be personally responsible for both the stigmatizing statements and inducing the termination.  By the same token, if such factual backup is missing, then Defendant Schouppe would likely prevail at summary judgment.

[18] Although the causation element is characterized as a "question of fact," *Hill*, 455 F.3d at 241, it is appropriate to consider it at this stage because of the dearth of facts pled allowing even an inference in favor of the Plaintiff on that topic. "A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *DeFlaminis*, 480 F.3d at 267.  The Court seeing no facts that would allow a factfinder to draw a plausible inference of causation with regard to Defendant Schouppe, this claim as to him will be dismissed.

*DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotation marks and citations omitted). Plaintiffs must also plausibly plead that retaliatory acts are not *de minimis* but are significant enough that they would "deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) ("[N]ot every critical comment—or series of comments—made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights."). Additionally, "[w]hen there is more than one defendant, the employee must show that each defendant individually participated or acquiesced in each of the alleged constitutional violations." *Smith v. Cent. Dauphin Sch. Dist.*, 355 F. App'x 658, 667 (3d Cir. 2009).

For the purposes of this Motion to Dismiss, the Court will assume without deciding that Mr. Fouse's speech, both in the context of the EEOC proceedings in 2007-2008 and regarding the missing money incident of 2013, was protected.[19] Even so, the retaliatory act alleged—Monac's reading of the statement and Fouse's termination—is insufficient as a matter of law to establish a constitutional violation, given the statement's contents and surrounding circumstances as alleged in the Amended Complaint. Moreover, the Court agrees with Defendants that the Plaintiff's allegation of causation is far too attenuated to plausibly plead a First Amendment retaliation claim. ECF Nos. 30, at 18–19; 32, at 10–11.

The essence of Mr. Fouse's retaliation claim is that Defendant Monac's reading of his statement during the Prison Board Meeting and Mr. Fouse's subsequent termination by the Prison Board was the culmination of years of animosity between Mr. Fouse and Defendant Monac. Their issues date back, according to the Amended Complaint, to at least 2007 or 2008 when Mr.

---

[19] By making this assumption, the Court by no means indicates a conclusion that such speech meets the standards set forth by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Lane v. Franks*, 134 S. Ct. 2369 (2014), and interpreted further quite recently by our Court of Appeals in *Flora* and *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014). Even if it did, qualified immunity may well be available to shield the individual defendants from liability under the highly deferential standard announced in *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011).

Fouse "testified" as an Assistant Union Steward against Monac in an EEOC hearing on matters relating to another officer's complaint of discrimination on the basis of age and disability, and regarding an allegation of sexual harassment lodged by Mr. Fouse's wife against Monac.[20] ECF No. 27, ¶¶ 63–66. Mr. Fouse contends that Defendant Monac should be liable for reading a statement at the Prison Board Meeting because that statement was meant to get back at Mr. Fouse for events that occurred about five (5) years earlier by convincing the Prison Board to terminate Mr. Fouse. Defendant Schouppe should also be liable, Mr. Fouse alleges, because Schouppe attended the 2013 Prison Board Meeting and "took no action to stop Monac from reading this statement," and even potentially authored the statement himself. *Id.* at ¶ 76. The crux of his argument thus seems to be that the reading of the statement was itself the retaliatory act.

The Plaintiff's next step then appears to be a generalized contention that Defendant Monac's statement is what convinced the Prison Board to terminate Mr. Fouse, rather than some other factor, namely Mr. Fouse's involvement in the events surrounding the theft of the money on June 12, 2013.[21] This allegation, especially in an Amended Complaint, is simply implausible. As the Court explained with regard to the stigma-plus claim pertaining to Defendant Monac's statement, the statement attached to the Amended Complaint cannot be considered anything more than a long-winded and ultimately unsuccessful attempt by a suspended employee to save his job. It is not the type of statement (with a few critical comments sprinkled throughout but otherwise

---

[20] These paragraphs are somewhat difficult to parse, and the Court cannot tell for sure whether Mr. Fouse "testified" at multiple EEOC proceedings, one such proceeding and other internal disciplinary hearings pertaining to sexual harassment, or something else. The specific context is of no moment, however, since the Court will assume without deciding that the speech was protected by the First Amendment.

[21] By referencing his general involvement in the events of that incident, the Court is in no way passing judgment on the actual culprit of that day. By Mr. Fouse's account, which the Court must accept as true at the Motion to Dismiss stage, Defendant Monac stole the money. However, it is undisputed that Mr. Fouse was in fact at least involved in the events of that day as a general matter, which is what the Court means in stating that the Board may have terminated him based on his general involvement in the incident.

18

centering on Defendant Monac) that would "deter a person of ordinary firmness [in this case, Fouse] from exercising his First Amendment rights." *McKee*, 436 F.3d at 170.

Moreover, Defendant Monac's conduct cannot be fairly treated as "state action" at this point. As the Court previously explained, Defendant Monac was suspended (and about to be fired) at the time he gave the statement, and lacked any authority he may otherwise have had under state law. *Cf. Gibson*, 910 F.2d at 1518; *Washington-Pope*, 979 F. Supp. 2d at 555. Without some plausible factual or legal basis to support the argument that Defendant Monac, through his statement, was actually acting under color of state law and in that role read the statement to retaliate against Mr. Fouse and in doing so, caused him harm, such a claim as to him must fail. Because these allegations of the Amended Complaint consist of little more than rank finger-pointing by Mr. Fouse against an alleged workplace nemesis (and vice versa) without any plausible connection to conduct taken under the color of state law, the retaliation claim based on them will be dismissed.

With regard to Defendant Schouppe, the Complaint only pleads that his retaliatory acts came in the form of (1) "allowing" Defendant Monac to read a statement publicly when such a reading should have been stopped, and/or (2) collaborating with Defendant Monac on that statement or authoring it himself. The Court can only construe facts actually pled in favor of the Plaintiff at the Motion to Dismiss stage—it cannot supply such allegations. The vague and conclusory allegation that Defendant Schouppe should be held accountable for a suspended (and about to be fired) employee's defensive statement before the Prison Board—an employee Defendant Schouppe himself suspended—is insufficient to withstand a Motion to Dismiss. *Iqbal*, 556 U.S. at 678–79. This is especially true when there are no facts pled as to why *Defendant Schouppe* might seek to retaliate against Mr. Fouse. Mr. Fouse's 2008 "speech" was related to Defendant Monac. The Plaintiff identifies nothing about that speech critical of Defendant

Schouppe, or in any way plausibly suggesting a reason why Defendant Schouppe might retaliate against Mr. Fouse, especially five (5) years after the fact, and the Amended Complaint simply does not state a retaliation claim as to him.[22] And if the Plaintiff is attempting to somehow contend that Defendant Schouppe was in fact retaliating against Mr. Fouse "for his truthful statements regarding the events of July 12, 2013," ECF No. 27, at ¶ 62, he has similarly failed to provide any facts plausibly indicating how or why Defendant Schouppe might be so inclined, as again, it was Monac, not Schouppe, who was implicated by those statements.

The Plaintiff argues that the requisite causation can be inferred from "'a pattern of antagonism coupled with timing.'"[23] ECF No. 35, at 21 (quoting *Alers v. City of Phila.*, 919 F. Supp. 2d 528, 555 (E.D. Pa. 2013). He asserts that Defendant Monac's statement at the Prison Board Meeting even referenced that ongoing antagonism and that Defendant Schouppe's suspension of Mr. Fouse and subsequent termination also evidence the "pattern." This argument fails because the Amended Complaint is devoid of any facts showing any such "pattern" between 2008 and 2013. The Court cannot conclude that the plausibility standard is satisfied when the Plaintiff says he was fired in 2013 as part of a pattern of retaliation for protected speech made in 2008—and yet includes no other facts to support the allegation that the 2013 acts were part of an ongoing pattern spanning the years in between, despite an Amended Complaint that spans over 100 paragraphs. *See Brennan v. Norton*, 350 F.3d 399, 420 (3d Cir. 2003) ("Although the nine month gap here between expression and alleged retaliation is not, by itself, sufficient to preclude an inference of causation, there is nothing other than [the plaintiff's] claim of causation to connect

---

[22] In an unpublished opinion, the Third Circuit upheld the dismissal of a complaint when an allegation stated that County Commissioners "instructed" an official to ignore the plaintiffs' complaints. *Kriss v. Fayette Cnty.*, 504 F. App'x 182, 186–88 (3d Cir. 2012). Our Court of Appeals held that the allegation was "not supported by any specific facts" and similarly rejected the argument that the County should be liable. *Id.* at 186. Similarly, the bare and speculative assertion that Defendant Schouppe somehow sponsored Defendant Monac's statement is insufficient.

[23] Most of Plaintiff's arguments in his Oppositions to the Motions to Dismiss are verbatim rehashes, and therefore the Court will only cite to one of his briefs in addressing these points. *See* ECF Nos. 35, at 19–22; 36, at 19–22 (identical First Amendment retaliation arguments).

the two."). He similarly provides no other facts alleging some ongoing pattern between the events of July 12, 2013 and the Prison Board meeting in October.

Mr. Fouse further alleges that the timing of the statement, the suspension, and the termination also are within a sufficient "temporal proximity to Defednat [sic] Monac's and Shouppe's [sic] statements stemming form [sic] Plaintiff's protected speech in order to be causally connected." ECF No. 35, at 22. The Court takes this to mean that because those events all occurred within a few weeks of one another, they sufficiently show retaliation. But there is also a problem with this part of the causation argument—there needs to be temporal proximity between the protected speech and the events at issue, not each of the alleged retaliatory events themselves. Showing temporal proximity between Defendant Monac's statement to the Prison Board and Mr. Fouse's termination, with no other facts connecting the two, is not the same as showing close temporal proximity between protected speech and a subsequent termination.

The Amended Complaint simply does not assert a plausible claim of First Amendment retaliation against either individual Defendant. Because this is so even after having the benefit of an amendment and two (2) rounds of oral arguments, the Court concludes that allowing further amendment would be futile. *Great W. Mining*, 615 F.3d at 175; *see also Warren v. Fisher*, No. 10-5343, 2013 WL 6805668, at *5 (D.N.J. Dec. 20, 2013) (holding amendment futile when the plaintiff had multiple attempts to set forth a valid First Amendment retaliation claim and failed to do so). Thus, Mr. Fouse's First Amendment retaliation claim as to all Defendants will be dismissed with prejudice.

## C. Conspiracy

Stating a constitutional conspiracy claim under Section 1983 requires "(1) the existence of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D.

21

Pa. 2000). Simply put, no conspiracy to violate a plaintiff's rights can exist unless there is some actual violation of those rights. *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010) (citing *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)). In addition, there must be more than speculation that an agreement existed—there must be specific facts establishing approximately when the agreement was made, the specific parties to the agreement, the period of the conspiracy, and the object of the conspiracy. *Great W. Mining*, 615 F.3d at 178–79 (upholding denial of amendment on a conspiracy claim because the plaintiff alleged only unilateral action rather than a true conspiracy among various actors, and because the facts pled were insufficient to establish a meeting of the minds).

Plaintiff's allegations with regard to the civil rights conspiracy go as follows: Defendant Monac read a statement targeting Mr. Fouse at the Prison Board Meeting on October 23, 2013. ECF No. 35, at 23. Defendant Schouppe did not stop Defendant Monac from reading that statement, though Defendant Schouppe was in attendance.[24] ECF No. 27, at ¶ 76; ECF No. 35, at 24. The Plaintiff also makes much of the fact that "[t]he Prison Board did not usually permit such personnel statements to be read in open meeting; personnel matters were handled in 'executive session.'" ECF No. 35, at 24; ECF No. 27, at ¶ 76. He argues that the fact that the Prison Board and Defendant Schouppe thus "permitted" Defendant Monac to read this statement in public means that both Defendant Schouppe, and the County by extension, were engaged in a conspiracy with Defendant Monac to deprive Mr. Fouse of his constitutional rights. He also argues, though not in the section of his brief dealing with conspiracy, *see* ECF No. 35, 23–24, that the statement

---

[24] One may fairly ask what was Defendant Schouppe to do? After all, Defendant Monac was already suspended (by Schouppe) and was moments away from being fired (by the Prison Board) as it was. Mr. Fouse also argues that Defendant Schouppe "begged" an Assistant Union Steward not to attend the meeting. *Id.* at 23. To the extent that allegation is made to suggest that Schouppe wanted to make sure Mr. Fouse would not have a representative present to look out for him at the meeting, the Court is at a loss to understand how it plausibly alleges a conspiracy between Defendants Schouppe and Monac.

Defendant Monac read "sounded like" Schouppe had written it rather than Defendant Monac, and that several other employees agreed,[25] *see* ECF No. 27, at ¶ 76.

The Court will dismiss the Section 1983 conspiracy claims for two reasons. First, the Court has already concluded that Defendant Monac's reading of the statement did not amount to a constitutional violation. Since there was no violation of an underlying right necessary to support such an alleged conspiracy, there could not have been an act performed in furtherance of that conspiracy by a party to it. *Marchese*, 110 F. Supp. at 371. Second, the Amended Complaint does not allege specific facts suggesting the existence of any such agreement. As our Court of Appeals has explained, the Amended Complaint must include plausible facts regarding when the agreement was made, who was involved, and the specific object of the conspiracy. *Great W. Mining*, 615 F.3d at 179. Mr. Fouse's Amended Complaint asserts only vague and conclusory allegations, *see* ECF No. 27, at 90 (asserting that "Schouppe's statement to Chief Johnston was false, and raises the possibility factor from possible to plausible that Schouppe conspired with Monac to sabotage Fouse's corrections career and for that matter, his secondary employment with the Borough of Conway as a police officer" without providing any facts showing the formulation or existence of any such conspiracy), and otherwise describes unilateral actions undertaken without any semblance of agreement between two or more Defendants. Indeed, the Amended Complaint is devoid of any allegation whatsoever that the stigma-plus claim against Defendant Schouppe, the only act this Court has concluded may withstand a Motion to Dismiss, occurred due to an agreement between Defendant Schouppe and any other party to the action.

---

[25] Plaintiff offers up no plausible factual basis for his "sounds like" assertion. In fact, that assertion seems even less plausible when reviewing Defendant Monac's statement, which includes a direct appeal to Defendant Schouppe, essentially warning him that his job may be next and imploring him "to man up." ECF No. 27-1, at 3. The *Iqbal* standard would be stretched from "plausibility" to "speculation" if this Court were to conclude that it was plausible that Defendant Schouppe wrote a statement partially criticizing and warning himself for not nipping the situation in the bud.

23

Further, given that the Court specifically instructed Mr. Fouse's counsel that any Amended Complaint must aver more with regard to a conspiracy allegation than stating that Defendant Monac's statement "sounded" like Defendant Schouppe had written it, *Fouse*, 2014 WL 5585933, at *2, and that the Plaintiff has now failed to do so, the Court can only conclude that the Plaintiff is unable to plead more specific facts to establish the existence of such a conspiracy. Therefore, the Court will dismiss the claim for conspiracy with prejudice. *Stascavage v. Borough of Exeter*, No. 11-0772, 2012 WL 6593807, at *7 (M.D. Pa. Dec. 18, 2012) (dismissing a conspiracy claim with prejudice after reviewing newly asserted facts in an amended complaint and noting a continued failure to plead facts evincing an agreement between defendants).

## D. County Liability

The sole allegation[26] against the County is largely conclusory, and does not state a claim upon which relief may be granted for the reasons that follow.

Although counties may be liable for Section 1983 violations, such liability may not be imposed absent the infliction of injury by a policy or custom that "may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Simply put, plaintiffs must plausibly plead facts that amount to more than a dressed-up

---

[26] That allegation states:

> Beaver, acting by and through its employees and officials, including but not limited to Schouppe and/or Monac, pursuant to governmental custom, practice and policy which was so permanent and well-settled that it constituted practice or policy which had the force of law, knew or should have known of the aforedescribed problems and misconduct at the jail, and further had as its policy, since Schouppe was its highest policy making official at the jail, a policy to permit Schouppe to respond to personnel inquiries and permit its officials to give false statements regarding its employees [sic] personnel information, which also permitted Schouppe and Monac to retaliate against Fouse for having exercised his free speech rights, rendering Beaver liable to Fouse pursuant to 42 U.S.C. § 1983.

ECF No. 27, at ¶ 101. This claim is vague and conclusory, and after the Court disregards the legal conclusions contained within it, as it must, *Malleus*, 641 F.3d at 563, there is little left to plausibly support any alleged County liability.

*respondeat superior* theory for the Court to recognize a valid municipal liability claim, since "local governments are responsible only for their *own* illegal acts." *Olivieri v. Cnty. of Bucks*, 811 F. Supp. 2d 1112, 1122 (E.D. Pa. 2011) (internal quotation marks and citation omitted), *aff'd*, 502 F. App'x 184 (3d Cir. 2012).

To adequately plead the existence of a custom or policy, our Court of Appeals has explained:

> [A] plaintiff shows that a policy existed when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A plaintiff may establish a custom, on the other hand, by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.

*Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir. 2007) (internal quotation marks and citations omitted). Although Mr. Fouse uses both the term "custom" and the term "policy" in his Amended Complaint, ECF No. 27, at ¶ 101, that Amended Complaint and his briefs only really attempt to establish County liability based on Defendant Schouppe's position as the "highest policy making official at the jail," which allowed him to adopt a "policy [of] permit[ting] Schouppe to respond to personnel inquiries and permit its officials to give false statements . . . ." *Id.* The Court will therefore limit its consideration to this avenue of County liability.[27]

The Third Circuit has held that an individual's conduct may constitute "official policy" when the state actor has "final policy-making authority." *Hill*, 455 F.3d at 245. If the official is both (1) "responsible for making policy *in the particular area* of municipal business in question"

---

[27] To the extent that the Plaintiff does seek to allege County liability on the basis of a custom, the Court concludes that any such allegation is also implausible. After filing two (2) versions of his Complaint, filing two (2) rounds of briefing (including supplemental briefing), and taking part in two (2) rounds of oral argument, the Amended Complaint still does no more than assert bald and conclusory allegations that the County had a "custom" of allowing misconduct to go on at the Jail and allowing Defendant Schouppe to "respond to personnel inquiries and permit its officials to give false statements regarding its employees [sic] personnel information." ECF No. 27, at ¶ 101. With no allegation of who at the County knew of and acquiesced to this alleged conduct, and with no further specific allegations regarding the contours of this custom, the Court cannot conclude, even at this stage, that the County could plausibly be liable.

under state law, and (2) the policy-making authority is "*final and unreviewable*," the local government may be held liable for the official's actions. *Id.*

Under Pennsylvania law, Defendant Schouppe is not a final policy-maker in the area of personnel decisions, nor are his actions and decisions in that regard final and unreviewable. *See* 61 Pa.C.S.A. § 1733 ("The board shall appoint a warden of the county correctional institution. The warden, subject to the approval of the board, may appoint such deputy or deputies, assistant or assistants or corrections officers as may be required in the taking care of the county correctional institution."). The allegation weighed in this particular analysis is not whether Defendant Schouppe had the power to appoint or terminate Mr. Fouse, but a different kind of personnel decision—whether he had final decision-making authority and spoke for the County when he discussed former employees (here, Fouse) with other, external employers. In that regard, the Court concludes that it is not sufficiently and plausibly alleged that Defendant Schouppe acted in any policy-making role that can fairly be attributed to the County. Rather, he acted in the same way as a supervisor of any level when communicating with a potential or current employer about a former employee. His status as Warden, though arguably a final policy-maker as to the Jail in some respects, does not automatically convert his comments into statements of the Prison Board, or the County. The entire allegation against the County is stated in full in footnote 26, alone. A review of that allegation, and of the Amended Complaint as a whole, does not allow this Court to conclude Mr. Fouse has plausibly pled that Defendant Schouppe's alleged action of making false statements to Mr. Fouse's secondary employer implicates the County in any way.

Whether or not Defendant Schouppe can ultimately be held liable for his actions will depend on how the record develops. However, the Court concludes that Plaintiff's attempt to impute those actions to the County is no more than an attempt to convert alleged permissible "policy or custom" municipal liability under *Monell* into an impermissible *respondeat superior*

theory. Because Mr. Fouse has failed (for a second time) to plead facts sufficient to establish such *Monell* liability, the Court will grant Defendant Beaver County's Motion to Dismiss the Amended Complaint with prejudice.[28]

## E. Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). Under the two-part qualified immunity test, government officials will not be liable for money damages unless a plaintiff pleads "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* at 2080 (internal quotation marks and citations omitted). Qualified immunity is not available when the remedy sought is "prospective injunctive relief." *Hill*, 455 F.3d at 244 (holding qualified immunity defense unavailable "to the extent [a stigma-plus] claim requests a name-clearing hearing").

Because the Court will dismiss all counts with prejudice except for the stigma-plus claim as alleged against Defendant Schouppe, that claim as asserted against Defendant Schouppe in his individual capacity is the only allegation the Court need analyze under the qualified immunity framework. In that regard, the Court has explained that at least one available remedy for a stigma-plus claim is to order a name-clearing hearing, whether it has been specifically requested or not. *Id.* at 239 n.19. The fact that such injunctive relief is at least one, if not the only, available remedy for a stigma-plus violation obviates the need to consider whether Defendant Schouppe is entitled to qualified immunity at this juncture. *See id.* at 244 ("[T]he defense of qualified

---

[28] This conclusion is not inconsistent with the Court's conclusion that it is at least plausible that Defendant Schouppe may be on the hook under the "stigma-plus" theory. At noted above, the Amended Complaint does not plausibly generate a basis to conclude that Schouppe was a final policy-making authority in terms of dismissing Mr. Fouse from employment, contrasting this case from *Hill*, in which the Third Circuit found the mayor had authority at least to effectuate a constructive discharge. Further, unlike the situation in *Fischl*, there is no plausible basis to conclude—post-*Iqbal* (*Fischl* was decided decades before *Iqbal*)—that Schouppe occupied such a significantly high position as Warden that it can be plausibly inferred that his act(s) in these regards could create a County policy.

immunity is available only for damages claims-not for claims requesting prospective injunctive relief.") The claim may proceed to discovery based on the unavailability of the qualified immunity defense as to one remedy for it. Defendant Schouppe's argument that he is entitled to qualified immunity is rejected without prejudice to its reassertion at a later stage of the proceedings, should it become apparent that Mr. Fouse does not seek (or seeks more than) a name-clearing hearing.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Monac's Motion to Dismiss the Amended Complaint with prejudice. With respect to Defendant Schouppe, the Court will deny the Motion to Dismiss as to the stigma-plus claim without prejudice to re-assertion on summary judgment. The Court will grant the Motion to Dismiss with prejudice as to the retaliation and conspiracy claims as to Defendant Schouppe. Lastly, the Amended Complaint is dismissed with prejudice in its entirety as to Beaver County.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: May 1, 2015

cc: All counsel of record